Filed 3/16/21  P. v. Wheeler CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DWAYNE TYRONE WHEELER, JR.<br><br>Defendant and Appellant. | B305257<br><br>(Los Angeles County<br>Super. Ct. No. BA287781) |

APPEAL from an order of the Superior Court of Los Angeles County, Ray G. Jurado, Judge.  Affirmed.

Neil J. Rosenbaum, under appointment by Court of Appeal, for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

_____

Dwayne Tyrone Wheeler, Jr., appeals from an order denying his petition to vacate his murder conviction and to be resentenced under Penal Code section 1170.95.[1] His appointed counsel filed a brief pursuant to *People v. Serrano* (2012) 211 Cal.App.4th 496, raising no issues. Wheeler filed a supplemental brief arguing the trial court erred in finding he had not made a prima facie showing of entitlement to relief. We find no error.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Close to midnight on July 28, 2005, Wheeler and fellow gang member Joshua Mansion approached Loli Castaneda and Carlos Avalos in a supermarket parking lot. Wheeler asked Avalos and Castaneda if they were from a rival gang. Avalos and Castaneda denied gang membership, and got into their car. Wheeler said to Mansion, "Shoot that fool." As Avalos and Castaneda's car was pulling out of their parking space, Mansion fired one shot through the passenger side window, hitting Castaneda who died soon after.

Wheeler and Mansion were tried together. The jury found defendants guilty of the willful, deliberate, and premeditated first degree murder of Castaneda, and the attempted murder of Avalos. The jury also found true as to Wheeler, among other findings, that a principal had discharged a firearm while committing the crime for the benefit of a gang. The trial court sentenced Wheeler to 65 years to life plus a determinate term of 20 years. We affirmed the judgment in an unpublished opinion. (*People v. Mansion* (Nov. 15, 2007, B194414) [nonpub. opn.].)

---

[1]    All further undesignated statutory references are to the Penal Code.

In January 2019, Wheeler, acting in propria persona, petitioned for resentencing pursuant to newly enacted section 1170.95, arguing that he may have been convicted of murder under the natural and probable consequences doctrine.  The trial court appointed counsel, and both parties filed briefs.  The People argued that the jury was not instructed on the natural and probable consequences doctrine and the prosecutor's references to "natural and probable consequences" in closing argument related to implied malice.

The court held a hearing on whether Wheeler made a prima facie showing that he fell within section 1170.95.  The court pointed out that the jury was not instructed with "CALCRIM 402 or CALCRIM 403, the natural and probable consequences instructions," and Wheeler's counsel agreed.  Instead, Wheeler's counsel referred to trial counsel's closing argument that "the natural and probable consequences" of Wheeler's request to "shoot that fool" was murder.  Wheeler's counsel argued that trial counsel proceeded under "both a direct aiding and abetting [theory], but also alternatively, a natural and probable consequences of the result of that statement" theory.  The deputy district attorney, who represented the People both at trial and at the section 1170.95 hearing, responded, "I didn't argue any lesser target offenses at any point.  And when I was speaking about the natural and probable consequences, I was speaking about the language in implied malice.  That's what I was referring to.  I never told the jury, 'This lesser crime' – 'if you believe he committed this lesser crime and the natural probable consequences of that leads to murder, then you can convict of murder.  That was never argued.' "

The court concluded that the jury was not instructed on the natural and probable consequences theory and did not rely on this theory to convict Wheeler. The petition was denied, and Wheeler appealed.

## DISCUSSION

When a defendant appeals the denial of postconviction relief, the Court of Appeal has "no independent duty to review the record for reasonably arguable issues." (*People v. Cole* (2020) 52 Cal.App.5th 1023, 1039, review granted Oct. 14, 2020, S264278.) "However, if the defendant files a supplemental brief, the Court of Appeal is required to evaluate any arguments presented in that brief and to issue a written opinion that disposes of the trial court's order on the merits . . . ." (*Id*. at p. 1040.) Here, Wheeler filed a supplemental brief arguing he was entitled to section 1170.95 relief because the jury may have convicted him under the natural and probable consequences doctrine, pointing to the prosecutor's references to "natural and probable consequences" in the context of implied malice.

Senate Bill No. 1437 (2017-2018 Reg. Sess.) enacted section 1170.95, amending "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f), p. 6674.) "As a result, the natural and probable consequences doctrine can no longer be used to support a murder conviction. [Citations.] The change did not, however, alter the law regarding the criminal liability of direct aiders and abettors of murder because such persons necessarily 'know and share the murderous

intent of the actual perpetrator.' [Citations.] One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law." (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135, review granted Mar. 18, 2020, S260598 (*Lewis*).)

Here, the trial court properly relied on the jury instructions in assessing the prima facie showing under section 1170.95, subdivision (c). (*People v. Edwards* (2020) 48 Cal.App.5th 666, 674, review granted July 8, 2020, S262481.) "The jury instructions given at a petitioner's trial may provide 'readily ascertainable facts from the record' that refute the petitioner's showing, and reliance on them to make the eligibility or entitlement determinations may not amount to 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citations.]" (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted Sept. 23, 2020, S263939 (*Soto*).)

There is no dispute that the jury was not instructed on the natural and probable consequences doctrine, nor does Wheeler claim that the jury was instructed on any target crime upon which the jury could have found murder on a natural and probable consequences theory. Instead, Wheeler's argument rests on the prosecutor's remarks about the "natural and probable consequences" of Wheeler's actions within the context of implied malice necessary for murder. The prosecutor's use of "natural and probable consequences" language in this context did not transform Wheeler's conviction into one for murder under the natural and probable consequences doctrine.

The *Soto* court described the distinction between implied malice and natural and probable consequences theories: "The natural and probable consequence doctrine . . . is a theory of

5

liability by which an aider and abettor who intends to aid a less serious crime can be convicted of a greater crime.  This doctrine comes into play when 'an accomplice assists or encourages a confederate to commit one crime, and the confederate commits another, more serious crime (the nontarget offense).'  [Citation.] Applying the natural and probable consequences doctrine, 'a defendant may be held criminally responsible as an accomplice not only for the crime he or she intended to aid and abet (the target crime), but also for any other crime that is the "natural and probable consequence" of the target crime.'  [Citation.] Unlike aiding and abetting implied malice murder, which requires the aider and abettor to (at least) share the mental state of the actual perpetrator of implied malice murder, ' "aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget offense [e.g., murder] because the nontarget offense was not intended at all." '  [Citation.]" (*Soto, supra,* 51 Cal.App.5th at p. 1058, review granted.)

Because the jury necessarily found Wheeler culpable for murder based on his own actions and mental state as a direct aider and abettor of murder, he "is thus liable for murder under the new law just as he . . . was liable under the old law" (*Lewis, supra,* 43 Cal.App.5th at p. 1135, review granted), and is ineligible for relief under section 1170.95.

6

### *DISPOSITION*

The February 7, 2020 order denying Wheeler's petition for resentencing is affirmed.


RUBIN, P. J.

WE CONCUR:


BAKER, J.


MOOR, J.